/16

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ERICA HEJNAR                          :
4354 BERMUDA STREET                   :
PHILADELPHIA, PA 19124,               :
                          Plaintiff,  :        CIVIL ACTION
                                      :        NO. 05-1565
            v.                        :
                                      :
OSCAR MARTINEZ (Badge #8857)          :
CITY OF PHILADELPHIA                  :
POLICE DEPARTMENT                     :
8TH and RACE STREETS                  :
PHILADELPHIA, PA 1910,                :
                                      :
NORBERTO CAPPAS (Badge#1287)          :
CITY OF PHILADELPHIA                  :
POLICE DEPARTMENT                     :
8TH and RACE STREETS                  :
PHILADELPHIA, PA 1910,                :
                                      :
EDWARD MARKOWSKI (Badge#6917)         :
CITY OF PHILADELPHIA                  :
POLICE DEPARTMENT                     :
8TH and RACE STREETS                  :
PHILADELPHIA, PA 1910,                :
                                      :
JOHN LIVINGSONE (Badge#2596)          :
CITY OF PHILADELPHIA                  :
POLICE DEPARTMENT                     :
8TH and RACE STREETS                  :
PHILADELPHIA, PA 1910,                :
                                      :
TODD OANDASAN (Badge# 2774)           :
CITY OF PHILADELPHIA                  :
POLICE DEPARTMENT                     :
8TH and RACE STREETS                  :
PHILADELPHIA, PA 1910,                :
                                      :
JOHN DOE OFFICER                      :
CITY OF PHILADELPHIA                  :
POLICE DEPARTMENT                     :
8TH and RACE STREETS                  :
PHILADELPHIA, PA 1910                 :
            and                       :

**FILED**

JAN 2 3 2006

MICHAEL E. KUNZ, Clerk
By _____ /uu _____ Dep. Clerk

CITY OF PHILADELPHIA    :
CITY HALL        :
PHILADELPHIA, PA 19107,   :  JURY TRIAL DEMANDED
     Defendants. :  AMENDED COMPLAINT

### JURISDICTION AND VENUE

1. This action arises under the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution as well as 42 U.S.C. 1983 and several state law claims. The court has jurisdiction over the federal law claims pursuant to 28 U.S.C. 1331 and 1343 and pendant and ancillary jurisdiction over the state law claims. This action concerns the Plaintiff's false arrest, unlawful detention and the sexual misconduct and abuse perpetrated against the Plaintiff by the Defendants.

2. Venue is proper under 28 U.S.C. 1391(b) because the cause of action upon which the complaint is based arose in Philadelphia, Pennsylvania, which is in the Eastern District of Pennsylvania.

### COMPLAINT

3. The Plaintiff in this matter, Erica Hejnar, is an individual and citizen of the Commonwealth of Pennsylvania, residing therein at 4354 Bermuda Street, Philadelphia, PA 19124.

4. The Defendant in this matter is Oscar Martinez ("Martinez") (Badge #8857), an officer in the City of Philadelphia Police Department.

5. The Defendant in this matter is Norberto Cappas ("Cappas") (Badge #1287), an officer in the City of Philadelphia Police Department.

6. The Defendant in this matter is Edward Markowski ("Markowski") (Badge#6917), an officer in the City of Philadelphia Police Department.

7. The Defendant in this matter is John Livingstone ("Livingstone") (Badge #2596),

2

an officer in the City of Philadelphia Police Department.

8.      The Defendant in this matter is Todd Oandasan ("Oandasan") (Badge #2774), an officer in the City of Philadelphia Police Department.

9.      The Defendant in this matter is John Doe (Badge #2774), an officer in the City of Philadelphia Police Department.

10.     The Defendant in this matter is the City of Philadelphia.

BACKGROUND

11.     On the evening of September 3, 2003, at approximately 7:00 PM, the Plaintiff and a female friend, Catherine Pennypacker ("Pennypacker") were walking along the 2300 block of North Front Street, Philadelphia, Pennsylvania attempting to locate an acquaintance of Pennypacker's who had just run off with some of her money.

12.     In the process of looking for said acquaintance, Pennypacker asked a gentleman standing on the street if he had seen anyone fitting the acquaintance's description run by. When the gentleman answered that he had not, the Plaintiff and Pennypacker continued to walk down the block.

13.     Neither the Plaintiff nor Pennypacker knew this gentleman and the Plainitff did not exchange any words with him. In fact, the Plaintiff stood on the opposite side of the street while Pennypacker spoke to the gentleman.

14.     Neither the Plaintiff nor Pennypacker gave anything to the gentleman, nor did they receive or accept anything from him.

15.     At this time, Defendants Martinez, Cappas, Markowski, Livingstone and Oandasan, officers in the City of Philadelphia Police Department working together in the area on

3

a plains clothes narcotics unit, were conducting a surveillance operation targeting the gentleman Pennypacker approached for help.

16.     From his surveillance post on the third floor of a school located at Howard and York Streets, Defendant Oandasan observed Pennypacker speak to the gentleman and then walk away with the Plaintiff.

17.     Despite not having witnessed any hand to hand exchanges occur between Pennypacker, the Plaintiff and the surveillance target, Defendant Oandasan relayed a flash description of Pennypacker and the Plaintiff to Defendants Martinez, Cappas, Markowski and Livingstone on the ground and told them to effect a stop on the two women.

18.     At this point, the Plaintiff and Pennypacker had neither engaged in criminal activity, nor taken any actions which would raise reasonable suspicion that criminal activity was afoot.

19.     Defendants Markowski, Cappas and Livingstone immediately began to follow the Plaintiff and Pennypacker east on York street and south on Front street where they stopped and handcuffed both women halfway to Front and Dauphin streets.

20.     The Defendants proceeded to conduct a frisk search of the Plaintiff and Pennypacker and asked them where the drugs were. Completely taken by surprise, the Plaintiff and Pennypacker strongly protested that they did not have any drugs.

21.     After a frisk search of the Plaintiff and Pennypacker failed to uncover any contraband, the Defendants, who had been joined by their supervisor, Martinez, by this time, called a female officer to the scene to conduct a more thorough search of the Plaintiff and Pennypacker.

4

22.     Officer Annamae Law (Badge#2734) ("Law") responded to the scene a few minutes later along with her partner, Joseph Goodwin (Badge#5643) ("Goodwin"). Officer Law searched the bras and underwear of the Plaintiff and Pennypacker but she also failed to uncover any contraband.

23.     Despite not having observed any hand to hand exchanges occur between the Plaintiff, Pennypacker and the surveillance target, and despite two searches of the persons of the Plaintiff and Pennpacker having failed to uncover any contraband, Defendant Martinez, without probable cause for arrest, ordered Law and Goodwin to transport the Plaintiff and Pennypacker to the 26th District Police Precinct so that a third and more intrusive search could be conducted on the two women.

24.     Defendant Martinez instructed Law that the Plaintiff and Pennypacker should be released if they did not have any warrants and if a search failed to uncover any contraband.

25.     At no time did any of the Defendants secure or attempt to secure an arrest or search warrant for the Plaintiff or Pennypacker.

26.     Once they arrived at the 26th District precinct, Law retrieved the cell block keys from the turnkey's desk in the operations room and escorted the Plaintiff and Pennypacker to the cell block by herself.

27.     In the cell block, Law performed another search of the bras and underwear of the Plaintiff and Pennypacker but again failed to find any contraband. Law then placed the Plaintiff and Pennypacker into a locked cell to await processing.

28.     When Defendant Martinez arrived at the precinct a few minutes later, Law informed him that the Plaintiff and Pennypacker had no warrants or contraband and asked if she

5

.

could release them.  Despite the fact that he was the supervising officer and had just been informed that there was no probable cause to continue holding the Plaintiff or Pennypacker, Defendant Martinez declined to order their release and responded by telling Law to wait for Oandasan.

29.    When Defendant Oandasan arrived at the precinct, Law informed him that the Plaintiff and Pennypacker had no warrants or contraband and asked if she could release them. Despite having been informed that there was no cause to continue holding them, Defendant Oandasan responded by telling Law to leave the Plaintiff and Pennypacker in their cell.

30.    Law complied with the orders of Defendants Martinez and Oandassan and left the precinct with Goodwin to resume their tour of duty.

31.    Some brief time thereafter, a lone unknown officer, Defendant John Doe, entered the cell block and sat down next to the Plaintiff on the other side of the bars to begin taking down information from both the Plaintiff and Pennypacker.  At one point during the night, Defendant John Doe also conducted a search of Pennypacker's personal bag.

32.    After Defendant John Doe finished taking the Plaintiff's and Pennypacker's information, he asked them if they wanted to "go home."  When they responded by saying yes, Defendant John Doe asked them "why should I let you go?"  After the Plaintiff responded that they had done nothing wrong, Defendant John Doe instructed them to kiss each other on the lips and fondle each others' breasts.  When the Plaintiff objected to the Defendant's instructions he told them he would only let them go if they did as he had instructed.

33.    In an attempt to placate Defendant John Doe, the Plaintiff and Pennypacker gave each other a quick kiss.  Unsatisfied, the Defendant demanded that the Plaintiff and Pennypacker

6

tongue kiss and fondle each other more.

34. In an attempt to coerce the two women, Defendant John Doe raised the keys to the cell and jingled them in a taunting manner.

35. The Defendant John Doe also threatened the Plaintiff and Pennypacker by telling them that "if you scream I'll make up some charge to keep you both in here."

36. Afraid that Defendant John Doe would physically hurt her if she refused, the Plaintiff submitted to the Defendant's demands and allowed Pennypacker to touch her.

37. At some point while the Plaintiff and Pennypacker were being forced by Defendant John Doe to touch each other, another unknown officer looked into the holding area, observed what the women were being made to do, and then left without comment.

38. After watching the Plaintiff and Pennypacker kiss and fondle each other for sometime, Defendant John Doe proceeded to demand that they perform oral sex on each other. At this point, the Plaintiff became extremely upset and began to cry uncontrollably.

39. When Defendant John Doe demanded that the Plaintiff and Pennypacker continue kissing each other, they refused . Defendant John Doe continued to demand that the women continue kissing each other and asked Pennypacker if she was "getting off" on touching and kissing the Plaintiff. After Pennypacker again pleaded for them to be released, Defendant John Doe told them he would think about it.

40. At approximately 9:00PM, after having tormented them for 45 minutes, Defendant John Doe released the Plaintiff and Pennypacker.

41. At no point did Defendant John Doe, or any other officer for that matter, ask the Plaintiff or Pennypacker a single question pertaining to their arrest or suspicion that they had

committed a criminal offense. The Plaintiff and Pennypacker were never charged with or accused of having committed a criminal offense.

42. Before leaving for their respective homes, the Plaintiff and Pennypacker conversed outside of the precinct and discovered that $20 and five public transit tokens were missing from their bags.

43. When the Plaintiff and Pennypacker attempted to re-enter the precinct to speak to someone about the incident which had just occurred, Defendant John Doe shouted at them to "get the fuck out of here before I put you back in the cell."

44. Approximately forty five minutes after they left the precinct, Law and Goodwin returned for a bathroom break. While walking towards the Operations Room, Law passed Defendant Markowski who upon seeing her, remarked "you should have been here, you missed the show."

45. Not understanding what Defendant Markowski was talking about, Law proceeded to the Operations Room where she came upon Defendant Cappas talking loudly and jokingly about how the Plaintiff and Pennypacker "were playing with themselves" and "fingering each other."

46. Upon hearing this, Law became very upset and began to yell at Defendant Cappas and called him an "asshole" for allowing the things he was describing to happen.

47. Law then walked over to Doreen Napper (Badge#1217) ("Napper"), the officer on turnkey duty that night, to discuss the incident with her. Napper shook her head and remarked "they wanted me to go back there."

48. Law then left the Operations Room, found Goodwin and left the precinct to

8

resume their tour of duty.

49.     At the time Law walked in on Cappas talking and joking in the Operations Room about the assault on the Plaintiff and Pennypacker, Defendant Martinez, Sergeant Shawn Gushue (Badge#0283), Napper and officer Geneva O'Neal (Badge#5212) were all present in the room.

50.     Defendant Martinez took no action upon hearing Defendant Cappas' account of what happened to the Plaintiff and Pennypacker in their cell.

51.     After being released, the Plaintiff left the 26th District precinct in a severe state of mental anguish and emotional distress.

52.     At approximately 11PM that night, the Plaintiff went to the 16th District Police Precinct to make a formal complaint and in her own handwriting described how she was assaulted.  Sergeant Deanthonis Edwards (Badge#8761) fielded the Plaintiff's complaint and noticed how upset she was at the time.

53.     Two days after the assault detailed above, the Plaintiff's distress was still so severe that she was forced to check herself into a hospital to seek medical attention.

54.     The Plaintiff also endured severe anxiety as she feared Defendant John Doe would attempt to find and harm her.

55.     To date, the Plaintiff continues to suffer from severe emotional distress and mental anguish as a result of the unlawful detention and sexual misconduct she was forced to endure at the hands of the Defendants.

9

COUNT I
VIOLATION OF 42 U.S.C. §1983
Plaintiff v. Defendants Martinez, Cappas, Markowski, Livingstone and Oandasan

56.     Paragraphs 1 through 55 of this complaint are incorporated herein by reference as
if set forth in their entirety.

57.     On the evening of September 3, 2003, the Plaintiff and Pennypacker were stopped,
searched, handcuffed and detained without probable cause by Defendants Martinez, Cappas,
Markowski, Livingstone and Oandasan while traveling along the 2300 block of North Front
Street, Philadelphia, Pennsylvania.

58.     Said detention was initiated by Defendant Oandasan during a surveillance
operation in which he had observed nothing more than Pennypacker speak to his surveillance
target. At no point did Defendant Oandasan observe the Plaintiff or Pennypacker make any hand
to hand excahnges with or purchase anything from the surveillance target.

59.     At the time they were detained, the Plaintiff and Pennypacker had neither engaged
in criminal activity nor taken any actions which would raise reasonable suspicion that criminal
activity was afoot.

60.     During the stop, Defendants Martinez, Cappas, Markowski, Livingstone and
Oandasan conducted a frisk search of the Plaintiff and Pennypacker but failed to find any
contraband.

61.     After failing to uncover any contraband from the frisk search of the Plaintiff and
Pennypacker, Defendant Martinez called Law to the scene to conduct a more thorough search.

62.     Upon arriving at the scene, officer Law searched the bras and underwear of the
Plaintiff and Pennypacker but she also failed to uncover any contraband.

10

63.     At no time did any of the Defendants secure or attempt to secure either an arrest or search warrant for the Plaintiff and Pennypacker.

64.     At no time did any officer develop probable cause to arrest the Plaintiff or Pennypacker.

65.     Despite the fact that the Plaintiff and Pennypacker had neither committed an illegal act nor been found to be in possession of contraband, nor been subject to an arrest or search warrant, Defendant Martinez, without probable cause for arrest, ordered that they be transported to the 26th District Police Precinct.

66.     Upon arrival at the 26th District precinct, Law escorted the Plaintiff and Pennypacker to the cell block and performed another search of the bras and underwear of the Plaintiff and Pennypacker but again failed to find any contraband.  Law then placed the Plaintiff and Pennypacker into a locked cell to await processing.

67.     When Defendant Martinez arrived at the precinct a few minutes later, Law informed him that the Plaintiff and Pennypacker had no warrants or contraband and asked if she could release them.  Despite the fact that he was the supervising officer and had just been informed that there was no probable cause to continue holding the Plaintiff or Pennypacker, Defendant Martinez declined to order them released and responded by telling Law to wait for Oandasan.

68.     When Defendant Oandasan arrived at the precinct, Law informed him that the Plaintiff and Pennypacker had no warrants or contraband and asked if she could release them. Despite having been informed that there was no cause to continue holding them, Defendant Oandasan responded by telling Law to leave the Plaintiff and Pennypacker in their cell, thus

11

continuing their unlawful detention.

69.     In arresting and detaining the Plaintiff without probable cause or an arrest warrant, Defendants Martinez, Cappas, Markowski, Livingstone and Oandasan deprived her of her right not to be arrested without probable cause or an arrest warrant.

70.     Based on the above, Defendants Martinez, Cappas, Markowski, Livingstone and Oandasan did falsely arrest the Plaintiff and violate her Fourth and Fourteenth Amendment rights under the U.S. Constitution.

71.     As a direct result of being falsely arrested, the Plaintiff was forced to suffer sexual assault and battery at the hands of Defendant John Doe, as described above.

72.     The Plaintiff has suffered and continues to suffer from severe emotional distress and mental anguish as a direct consequence of the sexual assault and battery she endured during her unlawful detainment.

73.     Having falsely arrested the Plaintiff, Defendants Martinez, Cappas, Markowski, Livingstone and Oandasan are jointly and severally liable to the Plaintiff for her emotional distress and mental anguish.

74.     Based on the above, Defendants Martinez, Cappas, Markowski, Livingstone and Oandasan are also jointly and severally liable to the Plaintiff for damages pursuant to 42 U.S.C. § 1983.

WHEREFORE, the Plaintiff, Erica Hejnar, claims compensatory and punitive damages in excess of the arbitration limit against the Defendants Martinez, Cappas, Markowski, Livingstone and Oandasan, jointly and severally.

12

## COUNT II
## VIOLATION OF 42 U.S.C. § 1983
### Plaintiff v. Defendant John Doe

75.    Paragraphs 1 through 74 of this complaint are incorporated herein by reference as if set forth in their entirety.

76.    At all material times, Defendant John Doe, acted individually under the color of state law which accompanied his position as an officer with the City of Philadelphia Police Department.

77.    On September 3, 2003, Defendants Martinez, Cappas, Markowski, Livingstone and Oandasan, acting individually under the color of state law, conducted a stop and frisk on the Plaintiff and Pennypacker without reasonable suspicion that a crime had been committed or that criminal activity was afoot.

78.    On September 3, 2003, probable cause to arrest the Plaintiff and Pennypacker did not exist as they had neither committed a criminal offense nor been found to be in possession of contraband of any kind.

79.    At no time did any of the Defendants secure or attempt to secure an arrest or search warrant for the Plaintiff or Pennypacker.

80.    Notwithstanding the absence of probable cause to arrest and lack of an arrest warrant, the Plaintiff and Pennypacker were handcuffed and detained by Defendants Martinez, Cappas, Markowski, Livingstone and Oandasan, acting individually under the color of state law, and taken to the 26th District Police Precinct in violation of their Fourth and Fourteenth Amendment rights under the United States Constitution.

81.    As a result of the Plaintiff's and Pennypacker's arrest without probable cause, they

13

were unlawfully detained and held against their will for several hours in the 26th District Police Precinct.

82.     While being unlawfully detained and held against their will, the Plaintiff and Pennypacker were forced to perform sexual acts against their will and suffer gross sexual misconduct and harassment at the hands of Defendant John Doe.

83.     At all material times, the Plaintiff had a liberty interest, under the Fifth and Fourteenth Amendments of the U.S. Constitution, in not being forced by the state to perform sexual acts against her will.

84.     On September 3, 2003, Defendant John Doe, by using his authority under the color of state law to force the Plaintiff to perform sexual acts against her will, did deprive the Plaintiff of her aforementioned liberty interest in violation of her rights under the Fifth and Fourteenth Amendments.

85.     As a result of her unlawful detainment and the outrageous sexual misconduct of Defendant John Doe, the Plaintiff has suffered and continues to suffer severe emotional distress and mental anguish.

86.     Based on the above, Defendant John Doe is liable to the Plaintiff for violating her Fifth and Fourteenth Amendment rights under the U.S. Constitution.

87.     Based on the above, Defendant John Doe is liable to the Plaintiff for damages pursuant to 42 U.S.C. § 1983.

WHEREFORE, the Plaintiff, Erica Hejnar, claims compensatory and punitive damages in excess of the arbitration limit against Defendant John Doe.

14

## COUNT III
## ASSAULT
Plaintiff v. Defendant John Doe

88.     Paragraphs 1 through 87 of this complaint are incorporated herein by reference as if set forth in their entirety.

89.     On September 3, 2003, Defendant John Doe, unaccompanied, entered the cell block at the 26th District Police Precinct where the Plaintiff and Pennypacker were being unlawfully detained in a locked cell.

90.     Once inside the cell block, Defendant John Doe threatened the Plaintiff and Pennypacker with continued unlawful detainment unless they met his sexual demands by kissing and fondling each other in an offensive manner.

91.     Defendant John Doe possessed the full capability to carry out his threat and continue the unlawful detainment of the Plaintiff and Pennypacker.

92.     In addition to fearing continued unlawful detainment, the Plaintiff feared that Defendant John Doe would attempt to physically injure her if she did not meet his demands.

93.     Thus, Defendant John Doe's threats and overall conduct placed the Plaintiff in an imminent apprehension of offensive bodily contact.

94.     Based on the above, Defendant John Doe is liable to the Plaintiff for the tort of assault.

WHEREFORE, the Plaintiff, Erica Hejnar, claims compensatory and punitive damages in excess of the arbitration limit against Defendant John Doe.

15

## COUNT IV
## BATTERY
### Plaintiff v. Defendant John Doe

95.    Paragraphs 1 through 94 of this complaint are incorporated herein by reference as if set forth in their entirety.

96.    On September 3, 2003, Defendant John Doe, unaccompanied, entered the cell block at the 26th District Police Precinct where the Plaintiff and Pennypacker were being unlawfully detained in a locked cell.

97.    Once inside the cell block, Defendant John Doe threatened the Plaintiff and Pennypacker with continued unlawful detainment unless they met his sexual demands by kissing and fondling each other in an offensive manner.

98.    As she was physically secluded with Defendant John Doe and being unlawfully detained in a locked cell, the Plaintiff was placed in a state of fear by the defendant's wanton demands and threats.

99.    Due to her fear of Defendant John Doe, the Plaintiff was forced to submit to his demands and allow Pennypacker to touch her in a sexually offensive manner.

100.    Thus, Defendant John Doe did directly cause the Plaintiff to suffer offensive touching and contact.

101.    Based on the above, Defendant John Doe is liable to the Plaintiff for the tort of battery.

WHEREFORE, the Plaintiff, Erica Hejnar, claims compensatory and punitive damages in excess of the arbitration limit against Defendant John Doe.

16

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
Plaintiff v. Defendant John Doe

102.     Paragraphs 1 through 101 of this complaint are incorporated herein by reference as if set forth in their entirety.

103.     On September 3, 2003, Defendant John Doe, unaccompanied, entered the cell block at the 26ᵗʰ District Police Precinct where the Plaintiff and Pennypacker were being unlawfully detained in a locked cell.

104.     Once inside the cell block, Defendant John Doe threatened the Plaintiff and Pennypacker with continued unlawful detainment unless they met his sexual demands by kissing and fondling each other in an offensive manner.

105.     As she was physically secluded with Defendant John Doe and being unlawfully detained in a locked cell, the Plaintiff was placed in a state of fear by the defendant's wanton demands and threats.

106.     Due to her fear of Defendant John Doe, the Plaintiff was forced to submit to his demands and allow Pennypacker to touch her in a sexually offensive manner.

107.     As a result of Defendnat John Doe's intentional and reckless conduct, the Plaintiff was forced to undergo hospitalization and has suffered and continues to suffer severe emotional distress.

108.     Defendant John Doe's conduct was extreme and outrageous.

109.     Based on the above, Defendant John Doe is liable to the Plaintiff for the tort of intentional infliction of emotional distress.

WHEREFORE, the Plaintiff, Erica Hejnar, claims compensatory and punitive damages in

17

excess of the arbitration limit against Defendant John Doe.

## COUNT VI
### VIOLATION OF 42 U.S.C. §1983
Plaintiff v. City of Philadelphia

110.    Paragraphs 1 through 109 of this complaint are incorporated herein by reference as
if set forth in their entirety.

111.    At all material times, the City of Philadelphia has maintained a policy and or
practice of allowing its police officers to arrest people absent an arrest warrant and or the
existence of probable cause.

112.    At all material times, the City of Philadelphia has maintained a policy and or
practice of allowing its police officers to sexually harass and assault persons in custody.

113.    As a direct result of these policies and practices, Defendants Martinez, Cappas,
Markowski, Livingstone, Oandasan and John Doe were able to violate the Plaintiff's rights under
the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution by falsely arresting and
sexually assaulting her without fear of repercussion on the night of September 3, 2003.

114.    Based on the above, defendant City of Philadelphia is liable to the Plaintiff for the
injuries inflicted upon her by the Defendant police officers and damages pursuant to 42 U.S.C. §
1983.

WHEREFORE, the Plaintiff Eric Hejnar claims compensatory and punitive damages in
excess of the arbitration limit against the City of Philadelphia.

18

BY: _____

      MARK S. KEENHEEL, ESQUIRE
      MUSA R. KEENHEEL, ESQUIRE
      59 MAPLEWOOD MALL
      PHILADELPHIA, PA 19144
      (215) 848-0361
      ATT. I.D. # 41207
      ATT. I.D. # 89712
      ATTORNEYS FOR ERICA HEJNAR

19

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERICA HEJNAR | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | NO. 05-1565 |
| v. | : | |
| | : | |
| OSCAR MARTINEZ (Badge #8857), | : | |
| | : | |
| NORBERTO CAPPAS (Badge#1287), | : | |
| | : | |
| EDWARD MARKOWSKI (Badge#6917), | : | |
| | : | |
| JOHN LIVINGSONE (Badge#2596), | : | |
| | : | |
| TODD OANDASAN (Badge# 2774), | : | |
| | : | |
| JOHN DOE OFFICER, | : | |
| | : | |
| and | : | |
| CITY OF PHILADELPHIA, | : | |
| | : | |
| Defendants. | : | |

**F I L E D**

JAN 2 3 2006

MICHA... ... ...

By _____

CERTIFICATE OF SERVICE

I, Musa R. Keenheel, Esquire, counsel for the Plaintiff in the above-captioned matter,

hereby certify that a true and correct copy of the above captioned Complaint was served upon the

following by certified mail on January 19, 2006:

Michele L. Dean, Esquire
Civil Rights Unit
City of Philadelphia Law Department
One Parkway
1515 Arch Street
Philadelphia, PA 19102-1595

MARK S. KEENHEEL, ESQUIRE
MUSA R. KEENHEEL, ESQUIRE
59 MAPLEWOOD MALL
PHILADELPHIA, PA 19144
(215) 848-0361
ATT. I.D. # 41207
ATT. I.D. # 89712
Attorneys for Plaintiff Erica Hejnar